No. 14,427.

STATE OF LOUISIANA VS. WILLIE CARTER.

SYLLABUS.

A dying declaration must go in as a whole, and is not rendered inadmissible because some of its statements of themselves and if standing alone would be inadmissible.

APPEAL from the Twentieth Judicial District, Parish of Lafourche —*Caillouet, J.*

*Walter Guion,* Attorney General, and *Whitnell P. Martin,* District Attorney (*Lewis Guion,* of Counsel), for Plaintiff, Appellee.

*John S. Billiu,* for Defendant, Appellant.

---

The opinion of the court was delivered by

PROVOSTY, J. The accused was convicted of murder and sentenced to be hung. No one has appeared for him in this court, and no brief has been filed in his behalf. The only thing we find in the record calling for our attention is a bill of exceptions reserved to the action of the trial court in admitting in evidence the dying declaration of

the deceased.   Certain statements contained in this dying declaration are pointed out as being inadmissible in evidence because not relating to the immediate circumstances of the killing, and on account of these objectionable statements the dying declaration is objected to as a whole.

This is the second time that this same dying declaration has been objected to on this same ground.   On the previous occasion we disposed of the matter briefly, as follows:

"A written dying declaration is not inadmissible because sworn to; nor because some of its statements, of themselves and if standing alone, would not fall within the rule admitting dying declarations. The declaration must go in as a whole.   State vs. Trivas, 32 Ann. 1086."

We see no reason for changing this ruling.   The dying declaration is a peculiar species of evidence admitted, *ex necessitate,* in flagrant violation of all the ordinary rules of evidence.   It violates the rule against hearsay; it has not the sanction of an oath; it cuts off the opportunity for cross-examination; it rides rough shod over the sacred constitutional right of an accused to be confronted with the witnesses against him.   To all these grievous faults it may add the inherent infirmity of emenating from impaired faculties, benumbed already, or disordered by the panic of momentary death.   All these objections are overborne by the one consideration of public policy, that society may not be deprived of the evidence such as it is, and whatever it may be worth.   After all this, is the declaration to be excluded simply because the dying man has wandered off to some matters not pertaining to the immediate circumstances of the killing.   Verily, if the law so decided, it would have strained at a knat after swallowing a camel.

Where a dying declaration, otherwise admissible, happens to contain some extraneous matter, there is presented a choice between three courses:   First, of admitting it in its entirety, such as it is; second, of eliminating the objectionable parts; and, third, of excluding it.   The first course would violate the rule by which dying declarations must be confined to the circumstances of the killing; the second would violate the rule by which dying declarations must go in as a whole;   the third would deprive society of the benefit of the declaration, after for the sake of its admission sacrifice had been made of

such precious inheritances as the right of cross-examination and confrontation with witnesses.

Under these circumstances our ' ruling was that the declaration should go in, and we adhere to the ruling. Better let the declaration go in as a whole, such as it happens to be, with appropriate instructions from the court, rather than open the door to the dangerous process of revising or editing it, by which the sense of it might in particular cases be destroyed or distorted. The rule against fragmentary declarations has been established in the interest of the accused.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be affirmed.

Rehearing refused.